**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RYAN BAGWELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-CV-334 (CKK) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ryan Bagwell opposes Defendant U.S. Department of Education's September 25, 2015 Motion for Summary Judgment, and cross-moves for summary judgment in favor of Plaintiff.

**FACTUAL BACKGROUND**

On April 30, 2014, Plaintiff filed a FOIA request with the Department seeking copies of the following:

1. all records pertaining to your agency's review of The Pennsylvania State University's compliance with the Clery Act that was initiated in November 2011.

2. all e-mails, letters and documents that were sent or received between November 1, 2011, and December 31, 2012 and were between members of your agency and the following individuals or entities:

    a. employees of Freeh International Solutions
    b. employees of The Freeh Group

      c.      employees of the law firm of Freeh, Sporkin & Sullivan, LLP
      d.      employees of the law firm of Pepper Hamilton, LLP
      e.      Louis Freeh (freeh@freehgroup.com)
      f.      Tom Cloud (cloud@freehgroup.com)
      g.      Greg Paw (paw@freehgroup.com)
      h.      any other individual whose email address contains the freehgroup.com domain (i.e. somename@freehgroup.com).

(Exhibit A). Defendant provided a handful of documents over the course of 11 months, but chose not to provide Plaintiff with a final response. As a result, Plaintiff filed the complaint in the instant matter on March 4, 2015, seeking to enjoin the Department from withholding the requested records. The complaint was served upon Defendant U.S. Department of Education on April 9, 2015.

On April 23, 2015, 13 days after Plaintiff served his suit, the Department issued its final response (Exhibit B). It explained the Department had identified 54,000 pages of responsive records, but all were related to "an ongoing law enforcement investigation into Pennsylvania State University's compliance with the Clery Act." As a result, access to the remaining responsive records was denied in its entirety pursuant to 5 U.S.C. §552 (b)(7)(A), relating to information compiled for law enforcement purposes. In addition, some records were withheld pursuant to 5 U.S.C. §552 (b)(6), (b)(7)(C) and (b)(7)(E).

Also, on April 23, 2015, the Department's Office of Inspector General ("OIG") sent a separate reply to Plaintiff's FOIA request (Exhibit C). Therein, OIG stated it maintains records responsive to Item 2 of the request (records sent to OIG from Freeh, Sporkin & Sullivan) but denied access to the records pursuant to 5 U.S.C. §552 (b)(7)(A) (relating to a pending law

enforcement proceeding). OIG did not identify the subject of the purported proceeding or provide other details.

After discussions with Defendant's counsel, Plaintiff narrowed the universe of withheld, responsive records to the following:

1. Audit Trails/Documents Intended to Support the Validity of the University's Crime Statistics;

2. The Institutional Response to program review report;

3. Records of Discussion/Interview Notes to the extent they reflect communication or interaction with employees of the Freeh Group;

4. Any records sent between the Department's Office of Student Aid ("FSA") and the Freeh Group (note that during our conference call, it was stated that a limited number of written correspondence between the Freeh Group and FSA exist, perhaps only one email), and;

5. Responsive records in the possession of the Inspector General.

(Exhibit D). On July 24, 2015, Defendant provided declarations to support its exemption claims, and on August 4, 2015, Plaintiff informed defendant he would contest Defendant's all of Defendant's exemption claims.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to the material facts, and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA lawsuits are typically resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*,

520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews agency handling of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

The government bears the burden to establish that its claimed exemptions apply to each document for which it invokes an exemption. *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619, 393 U.S. App. D.C. 384 (D.C. Cir. 2011). The government cannot satisfy its burden with affidavits that are vague or conclusory, or merely parrot the statutory standard. *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287, 372 U.S. App. D.C. 198 (D.C. Cir. 2006). Evidentiary declarations must describe the justifications for withholding in "specific detail, demonstrate[ing] that the information withheld logically falls within the claimed exemption." *Am. Civil Liberties Union*, 628 F.3d at 619. "When demonstrating that a FOIA exemption applies to some portion of a document withheld, the agency must also provide a detailed justification for its non-segregability," *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776, 354 U.S. App. D.C. 49 (D.C. Cir. 2002), and the agency should "describe what portion of the information is non-exempt and how that material is dispersed throughout the document," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261, 184 U.S. App. D.C. 350 (D.C. Cir. 1997).

### III.   ARGUMENT

**A.   Defendant may not withhold responsive records pursuant to the The Higher Education Act of 1965, Section 498A (20 U.S.C. § 1099c-1) and Exemption 3.**

Plaintiff seeks a copy of PSU's Institutional Response to Program Review Report. Defendant has denied access to this document, citing The Higher Education Act of 1965, Section 498A (20 U.S.C. § 1099c-1) (The "Act") and Exemption 3. Contrary to the agency's claims, the

Act does not protect the requested document, and it therefore may not be withheld pursuant to the Act and Exemption 3.

To understand the limited document protections afforded by the Higher Education Act of 1965, it is important to understand the Department of Education's program review process. The Act authorizes the Secretary of Education to conduct "program reviews on a systematic basis" of institutions that participate in various government programs. 20 U.S.C. § 1099c-1(a)(1). Pursuant to the Act, the Secretary must establish guidelines for conducting program reviews. 20 U.S.C. § 1099c-1(b)(1). Those guidelines have been published in the Department's Program Review Guide for Institutions ("Prog. Rev. Guide," Exhibit E).

The program review begins when the Department notifies the institution that its program(s) will be reviewed (Prog. Rev. Guide, p. 2-1). Department reviewers first conduct an on-site visit, where they collect documents and conduct interviews for further off-site analysis (Prog. Rev. Guide, p. 3-1). Subsequent to the on-site visit, reviewers process the collected information and issue a Program Review Report (Prog. Rev. Guide, p. 8-2). The report will describe any compliance issues discovered during the Department's analysis, and contain the required steps for correcting the deficiencies (Prog. Rev. Guide, p. 8-3). The institution is given a period of time to respond to the report and make corrections to its program (Prog. Rev. Guide, p. 8-5). After receiving the institution's response, the Department will issue a Final Program Review Determination letter, typically within three months of the institution's response (Prog. Rev. Guide, p. 9-1).

The Department notified PSU on November 9, 2011 that it would conduct a program review of its compliance with the Clery Act (Exhibit F). The review team began its inquiry on

November 28, 2011 with the required on-site visit. *Id*. The Department completed its preliminary review and issued its confidential Program Review Report to PSU on July 12, 2013 (Exhibit G), and PSU has provided its official response to the Program Review Report.

Defendant is correct that The Higher Education Act requires the Department to maintain the confidentiality of any Program Review Report until a "final program review report" is issued. 20 U.S.C. § 1099c-1(b)(8). However, the Program Review Report is not what is being sought. Plaintiff only seeks a copy of PSU's response to the program review report, which the Act specifically does not protect.

Defendant, citing 20 U.S.C. § 1099c-1(7), argues that the Program Review Report contains the institution's response, and because the Program Review Report is protected by statute, the response to the report must also be protected (Def. Memorandum, p. 3). Defendant's argument is factually inaccurate and logically flawed. The Program Review Report does not contain the PSU's response. Only the Final Program Review Determination contains the institution's response. 20 U.S.C. § 1099c-1(7). Furthermore, because the Program Review Report is issued prior to the response, the Program Review Report cannot possibly contain the response. Defendant, in its Pederson Declaration, acknowledges this fact, by stating "[a]n institution is required to respond in writing to all findings presented in a program review report (Pederson Decl. ¶ 5b).

Exemptions to the FOIA's disclosure mandate must be "narrowly construed" because "the mandate of the FOIA calls for broad disclosure of Government records." *DOJ v. Julian*, 486 U.S. 1, 8 (1988) (alteration omitted). The application of Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a

relevant statute and the inclusion of withheld material within the statute's coverage." *As'n of Retired Rail Road Workers v. U.S. Rail Road Retirement Board*, 830 F.2d 331, 336 (D.C. Cir. 1987). Plainly, The Higher Education Act only protects the Program Review Report. The requested information - PSU's response to the program review report - is not protected by the Act. Defendant cannot use the the Act to withhold documents that the Act does not protect.

**B.     Defendant has not met its burden of proving responsive records may be withheld in their entirety pursuant to Exemption 6.**

Plaintiff concedes that Exemption 6 generally allows the government to withhold student names, social security numbers and other identifying information. However, Exemption 6 does not permit the wholesale withholding of crime reports, security incident reports and victim allegation statements, as Defendant has done in this instance. Defendant has not explained why it cannot provide responsive records with identifying information redacted, nor has it met its burden of proving that Exemption 6 is applicable to any of the withheld records.

**C.     Defendant may not withhold responsive records pursuant to Exemption 7(A).**

Exemption 7(A) of the FOIA protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §552 (b)(7)(A). Its purpose is to "prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. United States Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).

For the government to successfully invoke Exemption 7(A), it must demonstrate the applicability of two elements. First, it must show that the identified law enforcement proceeding is pending or prospective. Second, it must demonstrate that the release of the information would reasonably be expected to cause some articulable harm. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224 (1978).

Only a sufficient showing of genuine harm is enough justify the withholding of records under Exemption 7(A). The types of harm that may sufficiently justify Exemption 7(A) include witness intimidation, revelation of the scope and target of the investigation, destruction of evidence, and construction of alibis. See *North v. Walsh*, 881 F.2d, 1098 U.S. App. D.C. 373 (D.C. Cir. 1989).

Importantly, records whose release would only harm a portion of a law enforcement proceeding must be released if the relevant portion of the proceeding has ended. *North v. Walsh*, 881 F.2d 1088, 1100, 279 U.S. App. D.C. 373 (D.C. Cir. 1989) ("Disclosure of the information … cannot interfere with parts of the enforcement proceeding already concluded.").

### 1.     Records of the Department's Clery Act Investigation

The Department is withholding documents related to its Clery Act investigation of PSU pursuant to Exemption 7(A). It groups these records into two categories. The first consists of about 100 pages that are intended to support the validity of PSU's crime statistics, and includes material that was prepared by both PSU and the department (Pederson Decl. ¶ 5a). The second constitutes PSU's response to the Department's program review report (Pederson Decl. ¶ 5b), and consists of about 7,250 pages that consist of (1) PSU's responses to the Department's findings; (2) police reports, arrest records, disciplinary files and similar documents, and; (3)

other law enforcement reports, student and employee conduct records, and additional documentation PSU was required to submit during the program review. *Id*.

Defendant's Clery Act investigation of PSU is no longer pending or prospective. The Department issued its Program Review Report to PSU more than two years ago, which described any regulatory violation(s) found during the review, the effect of the violation(s) and the steps the institution was expected to take in order to become compliant (Prog. Rev. Report, p. 8-3). The issuance of the report marks the end of the Department's review. It gathered facts and issued its findings to PSU in the form of a Program Review Report. The proceeding is no longer pending.

Notwithstanding, the Department must also demonstrate that the release of the responsive records would harm or interfere with the Department's Clery Act review. The Department cannot make such a demonstration, because none of the types of harm recognized by the Court in *North* (i.e. witness intimidation, revelation of the scope and target of the investigation, destruction of evidence, and construction of alibis) can be demonstrated by the Department. The Department itself has revealed the target of its investigation (i.e. PSU), as well as its scope (i.e. compliance with the Clery Act). The release of the withheld records cannot not be the impetus for the revelation of information that has already been revealed. Since the Department has already obtained its evidence against PSU, it cannot be wary of the destruction of evidence. Finally, to the extent the Department claims the release of the records would permit individuals to construct alibis or intimidate witnesses, Department reviewers have already gathered evidence from witnesses, nullifying the potential for either.

Defendant argues that releasing PSU's response would hinder the Department's efforts to obtain information from PSU and provide PSU an opportunity to tailor its response to favor the university (Pederson Dec. 5a). Defendant forgets that its information gathering ended in 2013 and its and findings have been provided to the university. PSU has already provided its response, and therefore, it no longer has an opportunity to adjust its response as Defendant fears. No harm would come from the release of the records.

### 2. Records of the Office of Inspector General

The Department is withholding 35 pages of e-mails between the Office of Inspector General, Federal Bureau of Investigation and the law firm Pepper Hamilton, LLP (Shepherd Decl. ¶ 6). Defendant states the e-mails "discuss record requests and subpoena requests related to an ongoing OIG criminal investigation," and contends their public release would harm the investigation by revealing the targets of the investigation who are not publicly known, the nature of the inquiry and investigative techniques. *Id*.

To prevail, Defendant must first demonstrate the e-mails relate to a pending or prospective law enforcement proceeding. *NLRB, supra.* The agency must explain "how and under what circumstances the requested files were compiled." *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). Defendant relies solely on the Shepherd Declaration, which states in a conclusory manner that the e-mails relate to "to an ongoing OIG criminal investigation" (Shepherd Decl. ¶ 6). Nothing describes the alleged violations to which the e-mails purportedly relate. This is exactly the kind of vague and conclusory statement that cannot serve as sufficient evidence to meet the required demonstration. Without more, Defendant cannot prove that the purported proceeding is pending or prospective.

Additionally, there are indications any federal investigation of PSU has concluded. First, the e-mails were exchanged between March and July of 2012; more than 36 months has passed since their creation. Second, in a separate FOIA request for information regarding PSU, the United States Attorney for the Middle District of Pennsylvania ("USAO") indicated it has ended its criminal investigation of PSU. This is evidenced by the FOIA response letter from the USAO, in which Exemption 7(A) was not invoked (Exhibit H). Because a requirement for invoking Exemption 7(A) is an ongoing enforcement proceeding, the failure to invoke 7(A) indicates that the proceeding has ended. Defendant must provide more than a conclusory statement about an ongoing proceeding in order to prove the application of Exemption 7(A).

Even if Defendant proves the OIG e-mails relate to a pending or prospective law enforcement proceeding, it must also show that release of the e-mails would cause articulable harm. Defendant cannot demonstrate the potential for harm because the information was revealed to the target of the investigation - PSU. FSS subcontracted with Pepper Hamilton to supplement FSS's legal team during its inquiry for PSU. Therefore, e-mails were sent PSU's attorneys. The information whose release Defendant fears has already been released to the very institution that was being investigated. Public release of this information would not harm an investigation when it has already been released to those who are being investigated.

Additionally, Defendant only states that the targets of the investigation are not known publicly (Shepherd Decl. ¶ 6). Defendant does not claim that the targets themselves are unaware of the investigation after three years. It is highly unlikely that the targets of the investigation were not notified of the investigation in some manner over the last three years. Revealing the

target(s) of the investigation would not harm the inquiry when the targets themselves are aware of its scope and focus.

**D.    Defendant may not withhold responsive records in their entirety pursuant to Exemption 7(C) and 7(D).**

Plaintiff concedes that Exemption 7(C) generally allows the government to withhold student names, social security numbers and other personally identifying information. However, Exemptions 7(C) and 7(D) do not permit the wholesale withholding of crime reports, security incident reports and victim allegation statements, as Defendant has done in this instance. Defendant has not explained why it cannot provide responsive records with identifying information redacted.

**E.    Defendant may not withhold responsive records pursuant to Exemption 7(E).**

Exemption 7(E) protects records or information compiled for law enforcement purposes to the extent release of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To prevail, Defendant must first demonstrate that the withheld information would either (1) reveal techniques and procedures for law enforcement matters, or (2) reveal guidelines for investigations. Additionally, Defendant must demonstrate that disclosure of the e-mails would risk circumvention of the law. *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993).

In attempting to satisfy the first element of the test, Defendant describes the withheld information as "search terms used by case agents in the course of the investigation" (Shepherd

Decl. ¶ 8). Thus, the only techniques or procedures that would be revealed if the e-mails were released would be that law enforcement investigators conducted an electronic search for information. The fact that law enforcement agencies query electronic databases is hardly a secret, and only techniques not well known to the public are protected by Exemption 7(E). *Rugiero v. DOJ*, 257 F.3d 534, 551 (6th Cir. 2001).

Defendant's evidence also fails to prove the second part of the test. Defendant states "[d]isclosure of these terms could risk circumvention of the law in this ongoing investigation" (Shepherd Decl. ¶ 8). This description merely parrots the language of the statutory standard and is therefore too conclusory for Defendant to meet its burden. Defendant must show how release of the information would circumvent the investigation to prevail on its 7(E) claim.

Notwithstanding, release of the information would not circumvent any investigation because the search terms were provided to FSS, an attorney working for the investigation's target. Therefore, the target of the OIG investigation already knows about the terms.

While Defendant has revealed little about the e-mails, its discussion about "search terms" with FSS is remarkably similar to discussions between employees of the National Collegiate Athletic Association ("NCAA") and FSS during FSS's internal investigation on behalf of PSU. During FSS's work for PSU, the NCAA submitted search terms for FSS to use when querying its e-mail database[1]. It is likely the withheld e-mails document a similar procedure, one where law enforcement officials investigating PSU asked FSS to search for electronically stored information about particular topics on PSU's behalf, and provide that information to

---

[1] http://www.post-gazette.com/news/state/2014/11/12/E-mails-show-NCAA-Freeh-worked-together-in-Penn-State-probe/stories/201411120174

investigators. Revealing the existence of such a practice - asking an institution to provide information on particular areas of inquiry - would not circumvent any investigation.

**F.      Defendant has not demonstrated it has released all segregable information.**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). District courts have an affirmative obligation to consider the issue and make segregability findings. See *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). Defendant has not adequately explained why it cannot release responsive records with the identities of particular individuals redacted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this court to **DENY** Defendant's motion for summary judgment, **GRANT** Plaintiff's cross-motion for summary judgment and order Defendant to release all responsive records to Plaintiff.

Respectfully submitted,

_____
Ryan Bagwell
22 Cowdrey Lane
Acton, MA 01720
(608) 466-6195
ryan@ryanbagwell.com