# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RYAN BAGWELL,

     Plaintiff

     v.

U.S. DEPARTMENT OF EDUCATION,

     Defendant

Civil Action No. 15-334 (CKK)

## MEMORANDUM OPINION
(April 26, 2016)

Plaintiff Ryan Bagwell, who is proceeding *pro se*, submitted a Freedom of Information Act ("FOIA") request to the United States Department of Education seeking records pertaining to the Department's review of compliance by the Pennsylvania State University ("Penn State" or "the University") with the Clery Act, 20 U.S.C. § 1092(f), which imposes requirements regarding the tracking and disclosure of certain campus crime statistics on institutions participating in the Federal financial aid programs, as well as correspondence between the agency and certain law firms, consulting firms, and related individuals. The Department ultimately produced certain materials, some of which were redacted, and withheld other materials, relying on several FOIA exemptions. Dissatisfied with the Department's withholding of materials, Plaintiff filed this action. At Plaintiff's request, Defendant produced several *Vaughn* declarations in order to justify the materials withheld. Now before the Court are Defendant U.S. Department of Education's [19] Motion for Summary Judgment and Plaintiff Ryan Bagwell's [21] Cross-Motion for Summary Judgment. The parties dispute the agency's application of the several FOIA exemptions on which the agency relies. Upon consideration of the pleadings,[1] the relevant legal

---

[1] The Court's consideration has focused on the following documents:

- Def.'s Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 19;

authorities, and the record for purposes of this motion, the Court GRANTS Defendant U.S. Department of Education's [19] Motion for Summary Judgment and DENIES Plaintiff Ryan Bagwell's [21] Cross-Motion for Summary Judgment. The Court GRANTS summary judgment to Defendant in full, and this case is dismissed in its entirety.

## I. BACKGROUND

### A.  Statutory Framework

The Court first briefly reviews the Clery Act, which is an essential element in the background of this case. Next the Court provides an overview of the several exemptions from disclosure under FOIA on which Defendant relies in withholding or redacting materials that are responsive to Plaintiff's FOIA request.

### a.  The Clery Act

Pursuant to the Clery Act, institutions of higher education participating in the Federal financial aid program are required to collect certain "information with respect to campus crime statistics and campus security policies of that institution." 20 U.S.C. § 1092(f)(1). In addition, those institutions are required to "prepare, publish, and distribute … an annual security report"

---

- Declaration of Ann Marie Pedersen ("Pedersen Decl."), ECF No. 19-1;
- Declaration of Shelley Shepherd ("Shepherd Decl."), ECF No. 19-3;
- Pl.'s Opp'n to Def.'s Mot. & Pl.'s Cross-Mot. for Summary Judgment ("Pl.'s Cross-Mot."), ECF No. 21;
- Def.'s Mem. of Points & Auth. in Supp. of Def.'s Mot. ("Def.'s Response"), ECF No. 24;
- Supp. Declaration of Ann Marie Pedersen ("Supp. Pedersen Decl."), ECF No. 24-1
- Supp. Declaration of Shelley Shepherd ("Supp. Shepherd Decl."), ECF No. 24-2; and
- Pl.'s Reply to Def.'s Resp. in Opp'n to Pl.'s Mot. for Summary Judgment ("Pl.'s Reply"), ECF No. 26.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

regarding those policies and statistics. *Id.* The Act establishes the minimum requirements for those annual reports, requiring the reporting of "[s]tatistics concerning the occurrence on campus, in or on noncampus buildings or property, and on public property" of certain crimes and other incidents. *Id.* § 1091(f)(1)(F). In addition to these substantive requirements, the Act also establishes a process for reviewing institutional compliance with the Act's requirements. *See id.* § 1099c–1.

Specifically, the Act requires that the agency "provide to an institution of higher education an adequate opportunity to review and respond to any program review report and relevant materials related to the report before any final program review report is issued." *Id.* § 1099c–1(b)(6). Furthermore, the Act requires that the agency "review and take into consideration an institution of higher education's response in any final program review report or audit determination, and include in the report or determination—

> (A) a written statement addressing the institution of higher education's response;

> (B) a written statement of the basis for such report or determination; and

> (C) a copy of the institution's response[.]"

*Id.* § 1099c–1(b)(7).

Finally, the review process is governed by a confidentiality provision. The Secretary of Education is required to

> maintain and preserve at all times the confidentiality of any program review report until the requirements of paragraphs (6) and (7) are met, and until a final program review is issued … except that the Secretary shall promptly disclose any and all program review reports to the institution of higher education under review.

20 U.S.C. § 1099c–1(b)(8).[2] Paragraphs (6) and (7), which govern the timeline of the applicability of the confidentiality provision, including the requirements for the review process described immediately above.

### b. FOIA Exemptions

*Exemption 3*

Pursuant to 5 U.S.C. § 552(b)(3), known as FOIA Exemption 3, FOIA does not apply to materials that are "specifically exempted from disclosure by statute … if that statute—

> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]"

5 U.S.C. § 552(b)(3).[3] "Under [this] exemption, the [agency] need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990)).

*Exemption 6*

Pursuant to 5 U.S.C. § 552(b)(6), known as FOIA Exemption 6, FOIA is inapplicable to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(3)(6). "The Supreme Court has

---

[2] In addition, this provision includes an exception, not relevant here, for communications by the agency with specified State and other organizations regarding the ongoing review. *See* 20 U.S.C. § 1099c–1(b)(5)-(6).

[3] Pursuant to this statutory provision, materials are also considered exempted from disclosure by a statute if that statute was "enacted after the date of enactment of the OPEN FOIA Act of 2009, [and] specifically cites to this paragraph." 5 U.S.C. § 552(b)(3)(B). This provision is not applicable to the case at hand.

interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602 (1982)). To apply this provision "a court must weigh the 'privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy.' " *Id.* (quoting *National Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 874 (D.C. Cir. 1989).

 " '[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " *Id.* (quoting *United States Dep't of Defense v. FLRA,* 510 U.S. 487, 497 (1994)) (alterations in original). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (citing *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)).

***Exemptions 7(A), 7(C), 7(D), and 7(E)***

 Pursuant to 5 U.S.C. § 552(b)(7), FOIA is inapplicable to

 records or information compiled for law enforcement purposes, but only to the
 extent that the production of such law enforcement records or information
 (A) *could reasonably be expected to interfere with enforcement proceedings*,
 (B) would deprive a person of a right to a fair trial or an impartial adjudication,
 (C) *could reasonably be expected to constitute an unwarranted invasion of
 personal privacy*, (D) *could reasonably be expected to disclose the identity of a
 confidential source, including a State, local, or foreign agency or authority or any
 private institution which furnished information on a confidential basis, and, in the
 case of a record or information compiled by criminal law enforcement authority
 in the course of a criminal investigation or by an agency conducting a lawful
 national security intelligence investigation, information furnished by a
 confidential source*, (E) *would disclose techniques and procedures for law*

*enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law*, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

5 U.S.C. § 552(b)(7) (emphasis added). As relevant here, this provision encompasses Exemption 7(A), relating to interference with enforcement proceedings; Exemption 7(C), relating to the invasion of personal privacy; Exemption 7(D), relating to the disclosure of the identity of confidential sources; and Exemption 7(E), relating to the disclosure of certain information regarding law enforcement investigations or prosecutions.

As a threshold matter, with respect to each of these exemptions, the agency must show that the records "are compiled for law enforcement purposes." *Id.* To do so, the agency "need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.' " *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). The Court now provides an overview of each of the subsidiary exemptions under this paragraph on which the agency relies.

*Exemption 7(A)*

Under Exemption 7(A), "records or information compiled for law enforcement purposes" are exempt from disclosure under FOIA to the extent the disclosure of those materials "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C.

6

Cir. 2000) (citations omitted). "Another recognized goal of Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses." *Id.* (citation omitted).

First, the government must identify either " 'a concrete prospective law enforcement proceeding' " or an enforcement proceeding that is "pending or reasonably anticipated." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) (quoting *Bevis v. Dep't of State*, 801 F.3d 1386, 1389 (D.C. Cir. 1980). Second, "the government must show that disclosure of those documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989); *see also id.* ("[A]n agency seeking to shield records or information behind exemption 7(A) must show that disclosure could reasonably be expected perceptibly to *interfere* with an enforcement proceeding.") (emphasis in original).

*Exemption 7(C)*

Materials compiled for law enforcement purposes are exempt from disclosure under FOIA, under Exemption 7(C), where such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "To determine whether Exemption 7(C) applies, [a court must] 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.' " *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis v. U.S. DOJ,* 968 F.2d 1276, 1281 (D.C. Cir. 1992)). "Where a legitimate privacy interest is implicated, the requester must '(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest.' " *Id.* (quoting *Boyd,* 475 F.3d at 387).

With respect to the privacy interests protected, "the exemption protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants." *Id.* (citation omitted). By contrast, with respect to the public interest considered, " 'the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to.' " *Id.* (quoting *Davis*, 968 F.2d at 1282).

*Exemption 7(D)*

Under Exemption 7(D), materials compiled for law enforcement purposes are exempt from disclosure where, as relevant here, such disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). The Supreme Court has explained that the word "confidential," in this context, "refers to a degree of confidentiality less than total secrecy." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 174 (1993). Rather, "[a] source should be deemed confidential if the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent the [agency] thought necessary for law enforcement purposes." *Id.*

*Exemption 7(E)*

Finally, under Exemption 7(E), materials compiled for law enforcement purposes are exempt from disclosure where disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To qualify for this exemption, it is necessary,

first, that the production of the requested materials would disclose either "techniques or procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions." *Id.* Second, materials are only exempt from disclosure under Exemption 7(E) "if such disclosure could reasonably be expected to risk circumvention of the law." *Id.*; *see Blackwell*, 646 F.3d at 42.

The United States Court of Appeals for the District of Columbia Circuit has emphasized the "relatively low bar for the agency to justify withholding" with respect to the latter prong of this exemption. *Blackwell*, 646 F.3d at 42. "[T]he exemption looks not just for circumvention of the law, but for a *risk of circumvention*; not just for an actual or certain risk of circumvention, but for an *expected risk*; not just for an undeniably or universally expected risk, but for a *reasonably expected risk*; and not just for certitude of a reasonably expected risk, but for the *chance of a reasonably expected risk*." *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (emphasis added).

## B.  Factual Background

On April 30, 2014, Plaintiff submitted a FOIA request to the Department of Education, requesting records pertaining to the agency's review of Penn State's compliance with the Clery Act, as well as correspondence between the agency and the Freeh Group, as well as certain other outside law firms, consulting firms, and associated individuals. *See* Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("Def.'s Statement"), ECF No. 19, ¶ 1. The Department of Education conducted a search in response to the request, which resulted in the identification of approximately 54,000 pages of responsive materials. *See* Pedersen Decl. ¶¶ 3, 7. Pursuant to a schedule proposed by the parties and this Court's orders, Plaintiff identified five categories of materials withheld for which he requested the preparation of a *Vaughn* index or

declaration justifying the withholding. *See* ECF Nos. 12-13. Specifically, Plaintiff's request covered the following categories:

1. Audit Trails/Documents Intended to Support the Validity of the University's Crime Statistics;
2. The Institutional Response to program review report;
3. Records of Discussion/Interview Notes to the extent they reflect communication or interaction with employees of the Freeh Group;
4. Any records sent between the Department's Office of Student Aid ("FSA") and the Freeh Group (note that during our conference call, it was stated that a limited number of written correspondence between the Freeh Group and FSA exist, perhaps only one e-mail), and;
5. Responsive records in the possession of the Inspector General.

Pedersen Decl., Ex. A (letter from Plaintiff), at 1. Plaintiff also requested a declaration addressing the volume and frequency of the communications between the Department of Education and the Freeh Group. *Id.* at 2.

In response, the Department of Education provided two *Vaughn* declarations from agency officials that, together, encompassed the five categories of documents delineated above. *See* Def.'s Statement ¶¶ 5-6. A declaration of Ann Marie Pedersen executed on July 24, 2015, describes the agency's withholdings with respect to the first four categories of document listed above. *Id.* ¶ 5; *see generally* Pedersen Decl. A declaration of Shelley Shepherd, Assistant Counsel to the Inspector General in the Department of Education, executed the same day, covered the final category of documents, which pertain solely to the Office of the Inspector General. Def.'s Statement ¶ 6; *see generally* Shepherd Decl. The following chart summarizes the agency's reliance on various FOIA exemptions with respect to the several categories of materials:

| Category of Materials | Agency Response | Exemptions Invoked |
|---|---|---|
| Audit Trails/Documents Intended to Support the Validity of the University's Crime Statistics | Withheld in full | 7(A) – entire category withheld<br>7(E) – entire category withheld |
| Institutional Response to Program Review Report | Withheld in full | 3 – entire category withheld<br>7(A) – entire category withheld<br>6 & 7(C) – subset of materials withheld |
| Records of Discussion/Interview Notes | No responsive records | n/a |
| Any Records Sent Between Department's FSA and Freeh Group | 85 pages of emails provided; 23 of these pages included redactions | 2 pages redacted pursuant to 6, 7(A), 7(C), 7(D)<br>21 pages redacted pursuant to 7(A) |
| Responsive records of the Inspector General | 35 pages of emails withheld in full | 7(A) – entire set of documents withheld<br>7(C) – subset of materials withheld<br>7(E) – subset of materials withheld |

After reviewing the declarations provided by the agency, Plaintiff informed Defendant and the Court that he was challenging all of the exemptions on which Defendant relied with respect to these five categories of documents.[4] Def.'s Statement ¶ 7. The parties' cross-motions for summary judgment regarding these contested issues are now ripe for review.

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation and internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)

---

[4] Plaintiff does not challenge the sufficiency of the agency's declaration with respect to the Freeh Group. In any event, the Court would find the agency's explanation sufficient. *See* Supp. Pedersen Decl. ¶ 5.

(citation and internal quotation marks omitted). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564-66 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations and internal quotation marks omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a *de novo* review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested … are exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the

discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Plaintiff challenges the agency's withholdings and redactions with respect to each of the five categories for which Plaintiff requested a *Vaughn* index or declaration, which were enumerated above. The agency defends its withholdings and redactions on the basis of two *Vaughn* declarations submitted with its motion for summary judgment, the Pedersen Declaration and the Shepherd Declaration, as well as based on two supplemental declarations submitted with its response in support of the motion for summary judgment, which were executed by the same two individuals. The Court reviews each category of documents challenged by Plaintiff, in turn, discussing the FOIA exemptions invoked by the agency with respect to each of those categories. The Court concludes that Defendant's redactions and withholdings are justified in full and grants summary judgment to the Department of Education on that basis.

### A. Audit Trails & Supporting Documentation

Pursuant to the Clery Act, universities participating in the Federal financial aid program are required to collect and disclose certain information about crime occurring on or near their campuses. 20 U.S.C. 20 U.S.C. § 1092(f)(1); *see also* Pedersen Decl. ¶ 4. In connection with the required collection of crime statistics by the Pennsylvania State University ("Penn State" or "the University"), Plaintiff requested the preparation of a *Vaughn* declaration with respect to "Audit Trails/Documents Intended to Support the Validity of the University's Crime Statistics." Def.'s Statement ¶ 4. The agency explained that the "audit trails and documents intended to support the validity of the University's crime statistics (approximately 100 pages) are part of an internal

quality control process during a program review." Pedersen Decl. ¶ 5a. The responsive

documents "include two primary categories of records: 1) spreadsheets and ledgers prepared by

the University that were intended to support the validity of its campus crime statistics and 2)

spreadsheets, ledgers, and other similar records created by the Department to support our

preliminary conclusions about the validity of the University's campus crime statistics." *Id.*

Plaintiff does not contest this characterization of these records. *See* Pl.'s Cross-Mot. at 8.

The agency relies on both Exemption 7(A) and Exemption 7(E) to withhold all of these

materials in full. Plaintiff challenges the agency's reliance on each of these exemptions. The

Court addresses the application of Exemption 7(A), followed by the application of Exemption

7(E).

### a. Exemption 7(A)

As noted above, under Exemption 7(A), "records or information compiled for law

enforcement purposes" are exempt from disclosure under FOIA to the extent the disclosure of

those materials "could reasonably be expected to interfere with enforcement proceedings." 5

U.S.C. § 552(b)(7)(A). To rely on this exemption, the agency must show, first, the existence of a

"concrete prospective investigation" or an investigation that is "pending or reasonably

anticipate." *Boyd*, 475 F.3d at 386. Next the government must show that disclosure "could

reasonably be expected perceptibly to *interfere*" with the enforcement proceeding. *North*, 881

F.2d at 1097 (emphasis in original).

With respect to the application of this exemption, the agency explains as follows:

> These documents must be protected from release because they are part of an on-
> going program review, which, as set forth above, is considered a law enforcement
> activity and appropriately withheld pursuant to 5 U.S.C. § 552(b)(7)(A). Release
> of this information could reasonably be expected to interfere with law
> enforcement proceedings by having a chilling effect on the University, making it
> more difficult for the Department to obtain full and open cooperation throughout

the pendency of the investigation. Further, prematurely disclosing the
justifications for our preliminary conclusions regarding the validity of the
University's campus crime statistics could reasonably be expected to influence the
University to prematurely adjust and restructure future disclosures to counter such
conclusions, instead of providing a more unbiased response.

Pedersen Decl. ¶ 5a.

Plaintiff argues that the agency's Clery Act investigation of Penn State is neither pending

nor prospective. Plaintiff also argues that the agency has not demonstrated that the investigation

would be harmed by the release of these responsive materials. For both of these reasons, Plaintiff

argues that the agency has not justified its withholding under Exemption 7(A). The Court agrees

with the Government that the agency has shown (1) that the investigation is ongoing and (2) that

the requested release could reasonably be expected to interfere with the investigation.

A brief review of the agency's program review process is necessary here. The parties do

not dispute the general outline of that process in light of the applicable statutory requirements.

*First*, the department undertakes to gather information regarding a program under review.

*Second*, the department creates a program review report that is shared with the institution under

review. *Third*, the institution has an opportunity to review and respond to that report. *See* 20

U.S.C. § 1099c–1(b)(6) (agency must "provide to an institution of higher education an adequate

opportunity to review and respond to any program review report and relevant materials related to

the report before any final program review report is issued."). *Finally*, after considering the

institution's response, the agency issues a "final program review report or audit determination."

*Id.* § 1099c–1(b)(7).

With respect to the program review at issue in this case, there is no dispute that the

agency has provided its initial program review report to Penn State. There is also no dispute that

the agency has not yet issued a final program review report or audit determination. The current

status of the investigation, however, is disputed. Citing only to a press release issued by Penn

State, Plaintiff states that the University received the agency's preliminary program review report on July 12, 2013. *See* Pl.'s Cross-Mot. at 6.[5] Based on this assertion and on the Department's Program Review Guide for Institutions 2009, Plaintiff argues that the investigation ceased being "pending," for the purposes of Exemption 7(A), when the agency submitted the preliminary report to the institution. Plaintiff reasons that the investigation's data gathering phase ended at that point, and therefore the investigation must be considered to have been completed at that time. Plaintiff's claim is neither supported by fact or logic.

As shown by the agency's declarant through a supplemental declaration, Plaintiff's argument  has no basis:

> Plaintiff is inaccurate in his characterization of the investigation as "no longer pending or prospective." Through the time of the final issuance of the Department's Final Program Review Determination, the Department can and will seek and accept additional information from the institution and other sources. This is specifically detailed in the Program Review Guide at page 8-7.

Supp. Pedersen Decl. ¶ 3. As noted in the Program Review Guide itself, "[i]f the information/documentation provided does not fully resolve the findings, the reviewers may contact the institution to obtain missing information or clarification." Pl.'s Cross-Mot, Ex. E (Program Review Guide), at 8-7. Plaintiff fixates on the permissive language of the Program Review Guide—that "reviewers *may* contact the institution"—to argue that an investigation is no longer pending. *See* Pl.'s Reply at 3. But this argument does not bear scrutiny. The agency, through its declarant, has stated that the investigation is ongoing, indicating that the agency "can and will seek and accept" information until the issuance of the final program review

---

[5] The Court notes that Plaintiff did not include this statement in his Statement of Material Facts which he submitted, as required by Local Civil Rule 7(h). In addition, citing to nothing at all, Plaintiff then states that the University has since provided its response to the preliminary report. *See id.*

determination. Supp. Pedersen Decl. ¶ 3. It is undisputed that the final determination has not yet

been issued. Accordingly, Plaintiff has provided no basis—other than sher speculation—to

suggest that the investigation has, in fact, concluded. In any event, the Court's conclusion that

the investigation remains pending wholly accords with common sense. The agency issued its

preliminary report; the institution has had an opportunity to respond; and the agency has yet to

issue its final determination. Notwithstanding Plaintiff's argument, the only reasonable

conclusion is that the investigation is still pending.

      The Court now turns to Plaintiff's second argument that any information disclosed would

not interfere with an investigation, to the extent that one remains ongoing. This argument

overlaps with Plaintiff's argument that the investigation is not pending. In support of this

argument, Plaintiff suggests that the agency has "already obtained its evidence," that the

agency's "information gathering ended in 2013," and that the agency's "findings have been

provided to the university." Pl.'s Cross-Mot. at 9-10. As explained above, these claims are belied

by the agency's representation that the investigation remains ongoing, notwithstanding the

provision of the preliminary report to Penn State, and that the agency continues to accept

additional information. Moreover, regarding the possibility that disclosures will interfere with the

ongoing investigation, the agency explains as follows:

> As such the risk of witness intimidation, destruction of evidence and construction
> of alibis still reasonably exist. Further, the release of the records could reasonably
> be expected to have a chilling effect on future witness testimony. In sum, the
> release of the information at issue can still reasonably be expected to harm the
> open investigation, despite the fact that the program review report has been
> issued. The Department has therefore withheld the records in their entirety under
> Exemption 7(A).

Supp. Pedersen Decl. ¶ 3. Plaintiff has provided no basis to doubt this representation, and the

Court concludes that the agency has shown that the release of the audit trails/supporting

documentation could reasonably be expected to interfere with the agency's ongoing

investigation. Accordingly, the Court concludes that the agency's withholding of all of the responsive materials in this category is properly justified, in full, on the basis of Exemption 7(A).[6]

### b. Exemption 7(E)

The Court now turns to the application of Exemption 7(E) to this category of materials, which is constituted by the audit trails and supporting documentation for the University's crime statistics. Under this exemption, materials are exempt from FOIA where disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As noted above, the responsive documents in this set of materials "include two primary categories of records: 1) spreadsheets and ledgers prepared by the University that were intended to support the validity of its campus crime statistics and 2) spreadsheets, ledgers, and other similar records created by the Department to support our: preliminary conclusions about the validity of the University's campus crime statistics." Pedersen Decl. ¶ 5a. The agency relies on the first prong of Exemption 7(E)—the disclosure of techniques and procedures for law enforcement investigations—to justify the withholding of these materials in full. *See id*. The agency's declarant further explains:

> Specifically, the information contained within these documents would allow the University and other recipients to ascertain the types of information used by the Department to detect invalid campus crime statistics, thereby making it easier for recipients to evade detection.

---

[6] Although the Court addressed the parties' arguments regarding Exemption 7(A) in the context of the audit trails/supporting documentation materials, the Court notes that the application of this exemption to other sets of records, discussed below, largely follows from the Court's analysis here.

*Id.* Plaintiff does not challenge the application of Exemption 7(E) to these materials; rather, he only challenges the application of this exemption to materials redacted by the agency's Office of Inspector General, as discussed below. *See* Pl.'s Cross-Mot. at 14. In any event, the Court concludes that the agency has adequately justified its withholding of the audit trails/supporting documentation under Exemption 7(E). The agency has stated, through a sworn declaration, that disclosure of the materials that support the crime statistics disseminated by the University, as well the materials supporting any audit by the agency of those statistics, would enable institutions to submit invalid crime statistics and to "evade detection." Pedersen Decl. ¶ 5a. Plaintiff has provided nothing that controverts this statement, and the Court has no basis to second-guess it. Accordingly, the Court concludes that the agency did not err in withholding the audit trail/supporting documentation pursuant to Exemption 7(E), in addition to withholding these materials in full pursuant to Exemption 7(A).

## B.  The Institutional Response to Program Review Report

As summarized above, the agency's program review process proceeds generally as follows: the agency begins to gather data; the agency issues a preliminary program review report to the institution under investigation; the institution has an opportunity to respond; and finally the agency issues a final report or determination. Plaintiff has requested Penn State's institutional response to the preliminary program review report issued by the agency. The agency describes the responsive materials in this category as follows:

> In the Penn State response to the program review findings (approximately 7,250 pages), documents include three primary categories of records: 1) the University's narrative responses to the Department's findings; 2) police reports, arrest records, disciplinary files, and other documents that are intended to substantiate the claims made in the University's narrative responses; and 3) additional law enforcement reports, student and employee conduct records, and other institutional documents including file reviews and document reconstructions that the University was required to submit as part of its response to the program review report.

Pedersen Decl. ¶ 5b. The agency has withheld these responsive materials in full on the basis of

Exemption 3 and, independently, on the basis of Exemption 7(A). In addition, the agency relies

on Exemptions 6 and 7(C), which both pertain to the withholding of materials on the basis of

privacy interests, with respect to certain information contained *within* this set of materials. The

Court analyzes, in turn, the application of each of these exemptions.

### a. Exemption 3

As explained above, under Exemption 3, FOIA does not apply to materials that are

"specifically exempted from disclosure by statute … if that statute—

> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]"

5 U.S.C. § 552(b)(3). The agency explains its withholding of the materials in this category under

this exemption as follows:

> This information must be withheld in full under 5 U.S.C. § 552(b)(3), as its release is prohibited by law. The Higher Education Act of 1965, Section 498A (20 U.S.C. § 1099c-l), as amended, requires that the Department "(8) maintain and preserve at all times the confidentiality of any program review report until the requirements of paragraphs (6) and (7) are met, and until a final program review is issued, other than to the extent required to comply with paragraph (5), except that the Secretary shall promptly disclose any and all program review reports to the institution of higher education under review". This prohibition requires the Department to keep confidential the institution response until a Final Program Review Determination is issued by the department. No Final Program Review Determination has been issued in the Penn State matter.

Pedersen Decl. ¶ 5b. That is, under the applicable governing statute, the agency must preserve

the confidentiality of "any program review report" until the agency has provided the institution

an opportunity to respond and until it has issued a final audit or determination. *See* 20 U.S.C.

§ 1099c–1(b)(6)-(8).

As crystalized in its Reply and Opposition to Plaintiff's Cross-Motion, the agency argues that disclosure of the institutional response to the preliminary program review report would indirectly reveal the content of the preliminary program review report. Therefore, the agency argues, the Higher Education Act of 1965 mandates the confidentiality of this material, and it is, accordingly, exempt from disclosure under FOIA pursuant to Exemption 3.[7] The Court agrees with Defendant's argument in whole.

The agency's declarant elaborates further why the disclosure of the institutional response would violate the confidentiality provision of the Higher Education Act:

> As set forth in the Program Review Guide cited by the Plaintiff, the Department requires institutions to prepare an institutional response that explicitly addresses all issues identified by the program review report, point by point. Prog. Rev. Guide, pg. 8-5. Therefore, releasing the institution's response at this time would implicitly release the underlying program review report by inference, which is prohibited by the statutory provisions cited previously. Twenty U.S.C. 1099c–1(b)(8) requires that the Department must "maintain and preserve at all times the confidentiality of any program review report." As set forth in the Program Review Guide cited by the Plaintiff, the Department requires institutions to prepare an institutional response that explicitly addresses all issues identified by the program review report, point by point. Prog. Rev. Guide, pg. 8-5. Therefore, releasing the institution's response at this time would implicitly release the underlying program review report by inference, which is prohibited by the statutory provisions cited previously. Twenty U.S.C. 1099c–1(b)(8) requires that the Department must maintain and preserve at all times the confidentiality of any program review report.

Supp. Pedersen Decl. ¶ 1. The Court concludes that this logic is persuasive.

Plaintiff only retorts that the agency has not provided any authority for the proposition that *implicit* disclosures of a program review report are barred by the applicable confidentiality provision and that, generally, FOIA exemptions to be construed narrowly, in favor of disclosure.

---

[7] The agency appears to have abandoned the argument it presented in its Motion for Summary Judgment that the institutional response is *part* of the program review report and therefore exempt from disclosure. Because the agency has not pursued this argument, the Court does not address it any further.

The Court notes that Plaintiff never suggests that disclosure of the institutional response *would not* reveal the content of the preliminary review report; rather, Plaintiff simply argues that such a revelation is not barred by the statute. While it is true that, as a general matter, FOIA exemptions are to be narrowly construed, it is necessary as a matter of logic and common sense for the institutional response to be protected by the confidentiality provision barring disclosure of "any program review report." In order for the confidentiality review provision to have any meaning, it must be read to bar the disclosure of the *content* of any program review report, not simply the report in its bound format—or the electronic equivalent—as delivered to the institution. For that same reason, the disclosure of the institutional response, which would necessarily reveal the contents of the preliminary program review report, is also barred by the statute's confidentiality provision. Plaintiff's semantic arguments regarding the labels of the several documents under discussion—comparing the preliminary and final program reports—do not provide an escape from this simple conclusion.

Under Exemption 3, "the [agency] need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865 (citation omitted). The Court concludes that the agency has shown that the material withheld is within the scope of the Higher Education Act's confidentiality provision and, therefore, is exempt from disclosure, in full, pursuant to Exemption 3.

### b. Exemption 7(A)

The agency also relies on Exemption 7(A) for its withholding of Penn State's institutional response to the agency's preliminary review report. As noted above, under Exemption 7(A), "records or information compiled for law enforcement purposes" are exempt from disclosure

under FOIA to the extent those materials "could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The agency explains its reliance on this

exemption as follows:

> In addition, as the program reviews are considered enforcement activities
> protected under 5 U.S.C. § 552(b)(7), these documents are also appropriately
> withheld under 5 U.S.C. § 552(b)(7)(A). Release of this information could
> reasonably be expected to interfere with law enforcement proceedings by having a
> chilling effect on the University, making it more difficult for the Department to
> obtain full and open cooperation throughout the pendency of the investigation.

Pedersen Decl. ¶ 5b. The Court's discussion above of the parties' arguments regarding the

application of this same exemption—with respect to the audit trails and supporting documents

for the University's crime statistics—largely resolves their arguments regarding the application

of Exemption 7(A) to Penn State's institutional response. First, above, the Court rejected

Plaintiff's primary argument that the agency's Clery Act review is no longer pending. That

conclusion is applicable here as well. Second, the Court rejected Plaintiff's argument that the

disclosure of the audit trails/supporting documentation would not harm the ongoing

investigation. While the institutional response to the preliminary program review report is

undoubtedly distinct from the materials addressed above, the Court arrives at the same

conclusion as above: that the agency has shown that the disclosure of the materials could be

reasonably expected to interfere with the ongoing investigation. As explained above, the Court

has accepted the agency's representation that it continues to receive information from the

institution until the issuance of the final determination or report. Therefore, "the risk of witness

intimidation, destruction of evidence and construction of alibis still reasonably exist." Supp.

Pedersen Decl. ¶ 3. As a result, "the release of the records could reasonably be expected to have

a chilling effect on future witness testimony." *Id.* Plaintiff has provided nothing to undermine

this conclusion. Accordingly, the Court concludes that the agency has justified withholding the institutional response, in full, under Exemption 7(A).

### c. Exemptions 6 and 7(C)

In addition to withholding Penn State's institutional response in full under Exemption 3 and under Exemption 7(A), the agency justifies the withholding of certain information *within* this set of materials on the basis of Exemption 6 and Exemption 7(C). As explained above, under Exemption 6, FOIA is inapplicable to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(3)(6). Under Exemption 7(C), materials compiled for law enforcement purposes are exempt from disclosure under FOIA where such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Applying each of these exemptions requires a balancing analysis, which weighs the privacy interest against the public interests in favor of disclosure that are at stake. The agency explains its withholding under these provisions as follows:

> The Penn State response also contains a significant amount of personally identifiable information, including student names, social security numbers, crime reports, security incident reports, and victim allegation statements, that must be protected pursuant to 5 U.S.C. § 552(b)(6) and (7)(C). The information itself is highly personal in nature and would be extremely damaging and/or embarrassing if disclosed, and would risk exposing the students to harassment and other unwanted public attention. Further, being identified as an individual with involvement in such a highly publicized investigation carries with it a negative connotation, and could subject the individual(s) to harassment, embarrassment and/or undue public attention. In contrast, the release of this identifying information would not significantly increase the public's understanding of the Department's performance of its mission. Because there is no public interest to outweigh the significant privacy interest at stake, this identifying information was withheld.

Pedersen Decl. ¶ 5b. In response, Plaintiff concedes that the agency may withhold "student names, social security numbers, and other personally identifying information." Pl.'s Cross-Mot.

at 12. However, Plaintiff argues that "crime reports, security incident reports and victim allegation statements" should have been produced with the identifying information redacted. *Id.* In response, the agency's declarant further explains why such redactions would not be possible:

> The Department notes that the records at issue, including crime reports, security incident reports, and victim allegation statements, by their nature contain privacy-related information apart from student names and social security numbers that must be protected pursuant to Exemptions 6 and 7(C). Further, the Department notes that, in some instances, redacting all exempt material under Exemptions 6, 7(C) and 7(D) may rob the records of any probative value.

Supp. Pedersen Decl. ¶ 2. Plaintiff has not provided anything that rebuts this explanation. Indeed, Plaintiff's argument regarding these exemptions is no more than conclusory. Moreover, the Department's contention that much of the information in the crime reports, security incident reports, and victim allegation statements would be privacy-related reflects common sense. Indeed, the information at issue, regarding particularly crime reports and statements by victims, can be of the most private nature. Such information is often underreported, and it is plausible that further disclosure of such private information would only exacerbate the challenges of such underreporting. *See, e.g.*, U.S. Dep't of Justice, *Victimizations Not Reported to the Police, 2006–2010* (2012), available at http://www.bjs.gov/content/pub/pdf/vnrp0610.pdf (last visited Apr. 20, 2016), at 1 (52% of all violent victimizations unreported). The balancing tests the Court must apply with respect to these exemptions indicate that the agency's withholding of this information was proper. *See Beck*, 997 F.2d at 1493; *Sussman*, 494 F.3d at 1115. Accordingly, in light of the agency's showing and in light of Plaintiff's failure to rebut that showing, as well as the limitations of his cursory argument, the Court concludes that the agency's withholding of information within the institutional response, as identified by the agency, under Exemptions 6 and 7(C) is justified.

**C. Discussion Records and Interview Notes in Connection with Freeh Group**

Plaintiff next requested a *Vaughn* index or declaration as to "Records of Discussion/Interview Notes to the extent they reflect communication or interaction with employees of the Freeh Group." The agency responded that it has no responsive records to this request. Pedersen Decl. ¶ 6. Plaintiff does not challenge this statement or otherwise challenge the adequacy of the search with respect to these documents.[8] No further discussion of these materials is necessary. The Court concludes that the agency's actions with respect to these materials comply with the requirements of FOIA.

**D. Records Exchanged Between the Agency and the Freeh Group**

Next, the Court turns to Plaintiff's request regarding records exchanged between the agency's Office of Student Aid and the Freeh Group. The Court notes that, in Plaintiff's request for a *Vaughn* declaration regarding this category of materials, Plaintiff indicated that "during our conference call, it was stated that a limited number of written correspondence between the Freeh Group and FSA exist, perhaps only one email." Def.'s Statement, Ex. A. With respect to this category of materials, the agency produced 85 pages of emails, of which 23 pages included redactions. Of these 23 pages, 2 pages were redacted pursuant to Exemptions 6, 7(A), 7(C), and 7(D); 21 pages were redacted pursuant to Exemption 7(A) alone.

The Court begins with the two pages redacted pursuant to the several exemptions mentioned here. The agency's declarant explains that "[t]he information redacted contains the name, contact information and other identifying information for individual(s) who may be witnesses and/or whistle blowers related to FSA's program review of the University." Pedersen

---

[8] The Court notes, however, that the agency has explained the limited nature of its interaction with a law firm linked to the Freeh Group, notwithstanding Plaintiff's theories to the contrary. *See* Supp. Pedersen Decl. ¶ 5.

Decl. ¶ 7a. The agency's declarant further explains the redaction of these two pages under

Exemptions 6, 7(A), 7(C), and 7(D):

> Pursuant to 5 U.S.C. § 552(b)(6) and (7)(C), being identified as an individual with involvement in such a highly publicized investigation carries with it a negative connotation, and could subject the individual(s) to harassment, embarrassment and/or undue public attention. In contrast, the release of this identifying information would not significantly increase the public's understanding of the Department's performance of its mission. Because there is no public interest to outweigh the significant privacy interest at stake, this identifying information was withheld.
>
> Further, as set forth above, the Clery Act investigation qualifies as an ongoing law enforcement investigation pursuant to 5 U.S.C. § 552[b](7)(A). Release of this identifying information may subject the individual(s) to threats or retaliation such that their willingness to cooperate with the Department would be significantly curtailed. In fact, the mere potential for such threats or retaliation would likely have a chilling effect on the individual(s) cooperation.
>
> Further, the information must be withheld under 5 U.S.C. § 552[b](7)(D), as the individual(s) were expressly promised confidentiality in exchange for providing information regarding the Clery investigation. Release of the name(s) could expose the individual(s) to retaliation, harassment and unwanted public attention, and would discourage other individuals from providing similar information to the Department in the future. Protecting the anonymity of the individual(s) is essential to the Department's effective law enforcement.

*Id.* With respect to the 21 pages redacted pursuant to Exemption 7(A) alone, the agency's

declarant justified the redactions as follows:

> Twenty-one pages – consisting entirely of duplicate copies of a single Email – contain redactions pursuant to 5 U.S.C. § 552[b](7)(A). The information redacted refers to information sources and compilation currently in use in this ongoing program review. Release of this information could reasonably be expected to adversely impact an ongoing law enforcement investigation by allowing the University and other recipients to evade detection, both in the current open investigation and in future law enforcement activities.

Pedersen Decl. ¶ 7b.

With respect to Exemption 7(A), which was invoked with respect to all 23 redacted

pages, the Court already concluded above that an investigation remains pending in this case.

Plaintiff has provided no basis to second-guess the agency's statement that disclosing the

redacted information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Accordingly, the Court concludes that the agency has made the requisite showing in order to rely on Exemption 7(A) for its redactions.

With respect to Exemption 7(C), as noted above, Plaintiff has conceded that the redaction of personal identifying information is generally proper. And Plaintiff has not provided any basis to conclude that the redaction of the personal identifying information in these *particular* e-mails is not proper. Because the agency only relied on Exemption 7(C), with respect to these materials, to redact personal identifying information, the Court need not address Exemption 7(C) any further. The Court concludes that the agency has adequately justified reliance on this exemption. Similarly, Plaintiff has made a related concession with respect to Exemption 6. *See* Pl.'s Cross-Mot. at 7. Given the limited application of Exemption 6 to personal identifying information within this set of e-mails, the Court concludes that the application of this exemption was proper as well.

Finally, with respect to Exemption 7(D), the Court concludes the agency's redaction of names was proper in light of the express promise of confidentiality provided to the persons whose information was redacted. *See Hodge v. F.B.I.*, 703 F.3d 575, 581 (D.C. Cir. 2013) (express promise of confidentiality presented in sworn declaration sufficient to justify reliance on Exemption 7(D)).

Accordingly, the Court concludes that the agency's redactions of the e-mails produced within this category of materials are justified by the agency's reliance on the several exemptions discussed here.

### E.  Inspector General's Records

Lastly, the Court turns to Plaintiff's request for a *Vaughn* index or declaration with respect to "Responsive Records in the Possession of the Inspector General." Shelley Shepherd, Assistant Counsel to the Inspector General, who submitted a declaration in support of the agency's response regarding the materials in the possession of the Office of the Inspector General, explains that "[t[he withheld information constitutes 35 pages of emails between the OIG, the Federal Bureau of Investigation, and the law firm Pepper Hamilton, LLP during the period March 2012 to July 2012." Shepherd Decl. ¶ 6. Shepherd also explains that "[t]he withheld records are unrelated to the Department's review of Pennsylvania State University's compliance with the Clery Act."[9] *Id.* ¶ 9. The agency relied on FOIA Exemption 7(A) to withhold the materials in full; the agency also relied on FOIA Exemptions 7(C) and 7(E) to withhold certain subsets of the materials. The Court addresses, in turn, each of these exemptions.

With respect to Exemption 7(A), Defendant is withholding this entire set of records because of an ongoing criminal investigation by the Office of Inspector General. The Shepherd Declaration further explains:

> These email records have been withheld in full under exemption (b)(7)(A) of the FOIA which protects records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with law enforcement proceedings. These emails discuss record requests and subpoena requests related to an ongoing OIG criminal investigation. As such, the production of this information would reveal targets of the investigation who are not publicly known, the nature of matters currently under investigation, and investigatory techniques which could reasonably be expected to interfere with law enforcement proceedings. Therefore, this information is protected in its entirety pursuant to the exemption. 5 U.S.C. § 552(b)(7)(A).

---

[9] The records are responsive to Plaintiff's FOIA request because that request included a request for all e-mails, letters, and documents that were exchanged between employees of Pepper Hamilton and the agency, within a limited period of time. *See* Def.'s Statement ¶ 1b.

Shepherd Decl. ¶ 6. While Plaintiff claims that the investigation of Penn State has concluded, the agency confirms that the criminal investigation on which it relies here is not related to Penn State.[10] *See* Supp. Shepherd Decl. ¶ 1. Therefore, Plaintiff's argument that there would be no harm from disclosure because *Penn State* is aware of the investigation is inapposite; the investigation in question is simply not connected to Penn State.

In addition, Plaintiff argues that could be no harm from disclosure because the targets of the investigation must already be aware of it. The agency acknowledges that "the targets are aware of the investigation," but emphasizes that "the targets are not publicly known." *Id.* ¶ 2. Given that the targets are not known publicly, the agency further explains the harm that would result from disclosure of the withheld materials:

> In addition to the harms cited in my earlier declaration, release of these records would also identify witnesses who could be subject to harassment, intimidation. Release would reveal the direction and scope of the investigation; it could lead to the premature release of evidence at a time when this matter will be before a grand jury.

*Id.* Plaintiff has provided nothing to rebut the harms forecasted by the agency. Therefore, the Court concludes that the agency has shown that disclosure of these materials "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Accordingly, the agency's withholding of these materials, in full, is justified by Exemption 7(A).

Turning briefly to the other exemptions on which the agency relied for its withholding of *portions* of this set of materials, the Court begins with Exemption 7(C). The agency relies on this exemption, which covers private information collected for law enforcement purposes, to withhold identifying information of "individuals of investigatory interest to [the Office of

---

[10] In any event, the Court concluded, above, that the agency's investigation of Penn State remains pending for all purposes relating to Exemption 7(A).

Inspector General], including targets and third-party individuals." Shepherd Decl. ¶ 7. Plaintiff

never challenges the withholding of this information pursuant to Exemption 7(C), and it appears

that Plaintiff may have conceded that such withholding is appropriate. *See* Pl.'s Opp'n at 12.[11]

Regardless, it is apparent that the balancing test applicable under Exemption 7(C) requires the

redaction of such personal identifying information in these circumstances. *See Sussman*, 494 F.3d

at 1115.

Lastly, the agency relies on Exemption 7(E) for the withholding of these e-mails to the

extent that they contain "search terms used by case agents in the course of the investigation" by

the Office of the Inspector General. Shepherd Decl. ¶ 8. Through the Shepherd Declaration, the

agency explains that "[d]isclosure of these terms could risk circumvention of the law in this

ongoing investigation." *Id.* Plaintiff responds that disclosing these materials would only disclose

the unsurprising fact that the agency used search terms, in the first instance, in its investigation.

But the Court need not don its Sherlock Holmes hat to agree with the Government that this

argument is "patently wrong." Def.'s Reply at 7. In fact, the disclosure of this information would

indicate which search terms the agency used to uncover wrongdoing in this particular case.

---

[11] Plaintiff never discusses the application of 7(C) to the set of withheld e-mails that are in the possession of the Office of the Inspector General. However, apparently in the context of other documents pertaining to Penn State, Plaintiff explicitly concedes that the redaction of similar identifying information is generally appropriate:

> Plaintiff concedes that Exemption 7(C) generally allows the government to withhold student names, social security numbers and other personally identifying information. However, Exemptions 7(C) and 7(D) do not permit the wholesale withholding of crime reports, security incident reports and victim allegation statements, as Defendant has done in this instance. Defendant has not explained why it cannot provide responsive records with identifying information redacted.

Pl.'s Cross-Mot. at 12.

Disclosing those terms would, therefore, facilitate the avoidance of the detection of wrongdoing

by persons committing such wrongdoing, who could eliminate the terms found in any agency

disclosure from their correspondence. Defendant's declarant further explains how disclosing this

information would risk future circumvention of the law:

> Release of the emails and other communications related to this program review
> would disclose techniques and procedures for law enforcement investigations;
> specifically, these records contain information about the specific law enforcement
> tools used to acquire evidence. The Department notes that there are multiple
> entities who regularly seek out information with regard to the Department's
> methodologies in an effort to advise institutions, not on better methods for
> compliance, but rather to identify the most minimum requirements for
> compliance. It is not in the Department nor the public's interests to have
> institutions of higher education comply with only the most minimum of
> requirements for campus security. Therefore, these records must be withheld
> pursuant to Exemption 7(E).

Supp. Shepherd Decl. ¶ 4. This explanation by the agency remains unrebutted by Plaintiff, and

ultimately reflects a common-sense conclusion that revealing this information "could risk

circumvention of the law."

Finally, Plaintiff argues that the agency provided the search terms to Fried, Spork and

Sullivan, LLP, a law firm working for the supposed target of the investigation. As the agency

points out, Plaintiff provides no factual basis for this claim, and the agency has explained in

detail why the claim is incorrect. *See* Supp. Pedersen Decl. ¶ 5. Accordingly, the Court concludes

that the agency has justified the withholding of this subset of the Inspector General e-mails on

the basis of Exemption 7(E)

For all of these reasons, the Court concludes that the agency properly applied each of the

FOIA exemptions on which it relies with respect to the materials in the possession of the Office

of the Inspector General—Exemptions 7(A), 7(C), and 7(E)—and that the agency properly

withheld these materials in full.

*       *       *

In sum, the Court concludes that all of the agency's withholdings and redactions are supported by the FOIA exemptions on which the agency relies, as discussed above. Furthermore, Plaintiff has not shown that the agency has failed to comply with its segregability obligations, and the Court concludes that the agency has, in fact, complied with those obligations. Accordingly, because there is no genuine dispute as to any material fact, the Court grants summary judgment to the agency in full.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant U.S. Department of Education's [19] Motion for Summary Judgment and DENIES Plaintiff Ryan Bagwell's [21] Cross-Motion for Summary Judgment. The Court GRANTS summary judgment to Defendant in full, and this case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 26, 2016

                                 /s/
                                 COLLEEN KOLLAR-KOTELLY
                                 United States District Judge